UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY LEE CHILDRESS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. 1:20-cv-01803-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERED REMAND**<br><br>(Docs. 18, 21) |

**INTRODUCTION**

Plaintiff Larry Lee Childress ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 7, 9, 10.)

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, the Commissioner's determination will be reversed and remanded for further proceedings.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on April 29, 2019. AR 159-60.[3] Plaintiff alleged that he became disabled on August 21, 2018, due to his spine, Sjogren's syndrome, autoimmune disease, carpal tunnel surgery right and left hands, rheumatoid arthritis both knees and hands, and umbilical hernias. AR 83, 167. Plaintiff's application was denied initially and on reconsideration. AR 83-86, 91-95. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ William Musseman held a hearing on August 12, 2020. AR 32-54. ALJ Musseman issued an order denying benefits on August 24, 2020. AR 12-26. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Hearing Testimony**

The ALJ held a telephonic hearing on August 12, 2020. Plaintiff appeared with his attorney, Sylvia Lopez. Robert Van Iderstine, an impartial vocational expert, also appeared and testified. AR 15, 32.

In response to questions from the ALJ, Plaintiff testified that he completed the eleventh grade. He did not have a diploma, GED, or college degree. He received EPA certification through a trade school for refrigerant, handling air conditioning and heating systems. Plaintiff last worked in September 2018 doing facility maintenance at an industrial chemical processing plant. His duties varied from small pump repairs to major equipment installs. AR 26-37.

When asked why he stopped working, Plaintiff testified that he was having issues performing his work. He was in a lot of pain due to back issues. His employer wanted him to stop working in light of company policy preventing him from working while on pain medication or prescription pain

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

medications. Plaintiff's doctor said he could not stop taking them and still be able to work. Plaintiff tried a spinal cord stimulator, which helped with the neuropathy pain down into his legs and into his feet. At the time he stopped working, he was having a hard time with his feet, with burning and numbness. He also had pain in his neck with pain down his shoulders into his hands. Although he had carpal tunnel surgery on both hands, the surgery only reduced about five percent of the numbness. His hands are still numb and tingly, and he tends to drop items. AR 38-39.

When asked about the current condition of his neck, Plaintiff reported that he cannot bend all the way down and has restrictions to the right. He has a compressed nerve in his neck and cannot hold his head down. He can look down about five minutes. He will get headaches, his eyes hurt, and he gets dizzy. AR 39-40.

When asked about pain radiating down to his hands, Plaintiff testified that he has sharp tingles and numbness. He can feel it in his elbows, wrists, and fingers. He has a hard time gripping with his fingers. Straightening his fingers hurts and they like to naturally stay curled in a fist. He has pain in his elbows, which causes problems with reaching. He has pain in his arm and into his shoulder, radiating from the neck down. The doctors have indicated that the numbness and tingling are from a pinched nerve in his neck and resulting neuropathy. His doctors talked about surgery, but the surgeon does not want to do it until after lower back surgery. Plaintiff reportedly needs his L5/S1, L4/L5, and L3/L4 fused. AR 40-42.

Plaintiff testified that he could lift ten pounds. He uses both hands to pick things up and he has a hard time gripping small things. He can write for a minute or two before his hands cramp. AR 42-43.

When asked about his lower back, Plaintiff testified that he has sciatic nerve pain that radiates into both of his feet, which are continuously numb and tingly, worse than his hands. Plaintiff takes Norco four times a day, which takes the edge off of the pain. AR. 43-44. He takes gabapentin twice a day, but still has pain and numbness. Without the gabapentin, his pain level goes up to an eight or nine. He has no known side effects from the medication, but he does get dizzy. AR 44-45.

Plaintiff also testified that he had minor surgery on his right knee, but he has problems bending with both knees. If he is down for more than 15 seconds, he almost needs help to get up. He does not have the strength in his knees to stand up. AR 45.

When asked about his headaches, Plaintiff reported that he has headaches daily and will sometimes have migraines at a pain level of eight. He has been having headaches for about 15 years. AR 45.

When asked about a typical day, Plaintiff indicated that he usually just lies around in bed. He walks around the house for about 20 minutes. He will then sit down on the recliner because his feet start hurting. He can sit for about 20 minutes before his neck starts hurting. He will walk around a little bit and usually lie down because his back is hurting. The only way to get relief from his back or his neck is to lie down flat. He probably lies down about six hours out of an eight-hour period. He estimated that seventy percent of his day is lying down in bed. AR 46.

Plaintiff testified that he is unable to help wash dishes, clean the house, or make the bed. He cannot bend down or sweep. He does very little driving because it hurts his neck to look for blind spots. If he drives, it will be to the doctor about a mile-and-a-half from his house. He does not go shopping because it is too much walking. He can sit comfortably for about 20 minutes, and then he will get sharp, aching pain up his spine. Plaintiff also testified that he has two hernias, a lower inguinal umbilical hernia and a left inguinal hernia. The doctors told him that he will continue to get them. AR 47-48.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE categorized Plaintiff's past work as a maintenance mechanic and equipment maintenance mechanic. AR 49. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume an individual of the same age, education, and work background as Plaintiff. This individual was limited to the full range of light work. The ALJ identified the following limitations: non-exertionally, occasional bend, squat, kneel; no ladders or scaffolds; frequent but not constant handling and fingering; occasional foot or leg controls, occasional overhead work, occasional turning or flexion of the neck. The VE testified that an individual with those limitations would not be able to do Plaintiff's

past work, but there would be other jobs available, such as information clerk, storage facility rental clerk, and tagging clerk.  AR 50.

For the second hypothetical, the ALJ asked the VE to assume the restrictions in the first hypothetical but add being off task at the workplace up to 70 percent of a normal workday.  The VE testified that this would not be tolerated in competitive employment.  AR 51.

For the third hypothetical, the ALJ asked the VE to assume the restrictions in the first hypothetical, but the individual could use bilateral upper extremities less than 15 percent of a normal workday, could handle, finger, grip, grasp, or reach in any direction.  The VE testified that the only available job would be surveillance systems monitor.  AR 51.

For the fourth hypothetical, the ALJ asked the VE to assume the restrictions in the first hypothetical and add that the individual would be absent from the workplace more than four times a month.  The VE testified that the number of absences would not be tolerated in competitive employment.  AR 51.

Following the ALJ's questions, Plaintiff's counsel asked the VE additional hypothetical questions.  For the fifth hypothetical, counsel asked the VE to assume hypothetical one and add that this person could not keep his head in one position for longer than five minutes.  The VE testified that such a person would not be able perform Plaintiff's past job and it was probably incompatible with competitive employment.  AR 52.

For the sixth hypothetical, counsel asked the VE to take hypothetical one and add that the person is incapable of even a low stress job.  The VE testified that if a person could not tolerate any stress, then there would be no jobs available.  AR 53.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-26.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 21, 2018, the

alleged onset date. AR 17. The ALJ identified degenerative disc disease of the cervical and lumbar spine, obesity, degenerative joint disease of the right knee and peripheral neuropathy as severe impairments. AR 17-18. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 18-19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work. He could occasionally bend, squat, and kneel, but could have no ladders or scaffolds. He could have frequent, but not constant handling and fingering. He could have occasional foot or leg controls, occasional overhead work, and occasional turning or flexion of the neck. AR 19-24. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but could perform other jobs in the national economy, such as information clerk, storage facility rental clerk, and tagging clerk. AR 24-25. The ALJ therefore concluded that Plaintiff was not disabled. AR 25-26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[4]

Plaintiff contends that the ALJ (1) improperly rejected the medical opinion of his treating physician, Dr. Mark Rivera, and (2) improperly rejected Plaintiff's symptom testimony. (Doc. 18.)

### A. Evaluation of Physician's Opinion

#### 1. Legal Standard

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record to reject the opinion of his treating physician, Dr. Rivera, in favor of a non-treating physician's opinion. (Doc. 18 at 17.)

As an initial matter, the parties appear to agree that because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 404.1520c; (Docs. 18 at 17-18; 21 at 10-11.) Under the new regulations, the Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

evidentiary requirements." 20 C.F.R. § 404.1520c(c)(3)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. Although Plaintiff suggests otherwise, these standards of articulation no longer apply in light of the new regulations. As recently explained by the Ninth Circuit in *Woods v. Kijakazi*, --- F.4th ---, 2022 WL 1195334 (9th Cir. 2022):

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

(*Id.* at *6.) The Ninth Circuit clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Id.*

**2.      Opinion of Dr. Rivera and Janine Bourelle, FNP-C**

As noted, Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Rivera. In so arguing, Plaintiff first notes that the ALJ misidentified Dr. Rivera's opinion as a statement from Janine Bourelle, FNP-C, the claimant's own treating source.[5] (Doc. 18 at

---

[5]     Ms. Bourelle is an acceptable medical source under the regulations. 20 C.F.R. § 404.1502(a)(7). The Court notes that the ALJ also considered a separate opinion from Ms. Bourelle. *See* AR 23.

8

21.) However, according to the record, Ms. Bourelle completed and signed a Residual Functional Capacity Questionnaire form in July 2020, which Dr. Rivera co-signed. AR 960-63. The Court construes this form as the opinion of Dr. Rivera at issue.

In July 2020, Dr. Rivera and Ms. Bourelle diagnosed Plaintiff with lumbar radiculopathy with a fair prognosis. His symptoms included "lower back pain, bilateral legs burning, tingling/numbness both hands," (AR 960), and his pain was characterized as "aching, burning low back and legs, worse with prolonged sitting or standing, pain is moderately severe." AR 960. Dr. Rivera and Ms. Bourelle identified objective signs to include reduced range of motion with knees and wrists affected, reduced grip strength, sensory changes, reflex changes, swelling, muscle weakness, and positive straight leg raising test. AR 960.

Dr. Rivera and Ms. Bourelle opined that Plaintiff experienced pain severe enough to interfere with attention and concentration constantly. AR 960. They further opined that Plaintiff was incapable of even a "low stress" job due to his symptoms and precipitating factors. Additionally, they reported that Plaintiff could walk 1 city block without rest or severe pain. He could sit twenty minutes at one time and could stand for 20 minutes at one time, but he could sit for less than 2 hours in an 8-hour working day and stand/walk less than 2 hours in an 8-hour working day. AR 961-62. Plaintiff also would need to include periods of walking every 20 minutes for 10 minutes each time. He would require a job that permitted shifting positions. He also would need to take unscheduled breaks every 20 minutes for at least 10 minutes before returning to work. On such breaks, Plaintiff would need to lie down. AR 962.

Dr. Rivera and Ms. Bourelle additionally opined that Plaintiff could rarely lift and carry 10 pounds or less than 10 pounds and could never carry 20 or 50 pounds. AR 962. Plaintiff could rarely twist, climb ladders, or climb stairs and could never stoop or crouch. Plaintiff also had significant limitations in repetitive reaching, handling, or fingering. During an 8-hour working day, Plaintiff could grasp, twist, and turn objects 10% of the time, could do fine manipulations 5% of the time and reach (including overhead) 10% of the time. Dr. Rivera and Ms. Bourelle estimated that Plaintiff would be absent from work due to his impairments or treatment more than four days per month. AR 963.

The ALJ found this opinion unpersuasive, reasoning as follows:

> For similar reasons to those described above, the undersigned finds FNP-C Bourelle's opinion not persuasive.  She supported her opinion by referencing the claimant [sic] lower back pain, the burning and tingling in his bilateral legs, and the numbness in his bilateral hands.  The evidence of his stable physical exam findings is inconsistent with FNP-C Bourelle's opinion.  For example, the claimant's gait was normal throughout the record, which is inconsistent with FNP-CBourelles' [sic] significant degree of limitation with respect to the claimant's postural capabilities.  Additionally, the claimant's normal extremity strength is inconsistent with FNP-C Bourelle's exertional and manipulative limitations.  For these reasons, the undersigned finds Ms. Bourelle's opinion from July 2020 not persuasive.

AR 23.

The main reason identified by the ALJ to discount the opinion of Dr. Rivera and Ms. Bourelle is that the opinion was inconsistent with physical exam findings.  The ALJ's reasoning invokes the consistency factor, which "means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' *Id.* § 404.1520c(c)(2)." *Woods*, 2022 WL 1195334, at *6.  Specifically, the ALJ determined that evidence of Plaintiff's normal gait throughout the record was inconsistent with significant postural limitations.  The ALJ also concluded that Plaintiff's normal extremity strength was inconsistent with exertional and manipulative limitations.  AR 23.

The Court finds that the decision to discredit the postural limitations as inconsistent with Plaintiff's normal gait is not supported by substantial evidence.  "[U]nder the new regulations, 'the decision to discredit any medical opinion, must simply be supported by substantial evidence.'" *Sexton v. Comm'r of Soc. Sec.* No. 1:21-cv-00379-EPG, 2022 WL 1471083, at *2 (E.D. Cal. May 10, 2022) (quoting *Woods*, 2022 WL 1195334, at *1).  As previously noted, substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Although Plaintiff may have had a normal gait, the ALJ does not cite relevant evidence or otherwise explain his conclusion that a normal gait is inconsistent with Plaintiff's postural limitations.

Further, the ALJ's decision appears to omit an evaluation of the persuasiveness of the medical opinion based on the factor of supportability.  AR 23.  Supportability means the extent to which a

medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." *Id.* § 404.1520c(c)(1)." *Woods*, 2022 WL 1195334, at * 6.  An ALJ must explain how the factor of supportability for a medical source's medical opinion was considered.  *Id.*, citing 20 C.F.R. § 404.1520c(b)(2).  The Ninth Circuit also has instructed ALJs "to use these two terms of art— 'consistent' and 'supported'—with precision." *Id.* at *7 n.4.  In this case, the ALJ does not mention or otherwise address the factor of supportability in connection with the opinion of Dr. Rivera and Ms. Bourelle.  The Court recognizes that elsewhere in the opinion the ALJ considered the supportability of Ms. Bourelle's opinion that Plaintiff was unable to perform any kind of work and was unable to sit or stand for longer than ten minutes but the ALJ's decision does not address the supportability of the joint opinion from Dr. Rivera and Ms. Bourelle.  *See* AR 23.  Indeed, the ALJ's decision does not consider the objective medical evidence identified in the joint opinion, such as reduced range of motion affecting knees and wrists, reduced grip strength, sensory changes, reflex changes, swelling, muscle weakness and positive straight leg raising test.  AR 960.

Ms. Bourelle's own treatment records identify objective findings of poor range of motion in the c-spine, positive straight leg raising bilaterally, and paraspinal tenderness of the lumbar spine.  AR 336, 338, 340, 344, 354, 747, 750, 753.  Additional treatment records reflect complaints of weakness and tingling in both arms (AR 335, 337), and decreased range of motion in the cervical and lumbar spine, cervical diminished pinprick perception from the wrist on distally, lumbar pinprick and light touch perception revealing hypoesthesia in a symmetrical stocking distribution from the distal 1/3 of the calf on distally (*See*, *e.g.*, AR 270, 360, 363, 365, 367).  The record also contains diagnostic findings, including EMG and NCV studies completed in 2019, which suggested peripheral neuropathy (AR 918), and lumbar MRI findings in June 2020, which showed degenerative disc disease with dextroscoliosis and retrolisthesis L2-3 and L3-4 as well as L5-S1, L3 narrowing of the rights lateral recess, L4-5 and l5-S1 mild canal stenosis, and neural foraminal narrowing includes L3-4 mild to moderate right, L4-5 moderate right and mild to moderate left, and L5-S1 "moderate to severe bilateral neural foraminal narrowing."   AR 900-01.  Because the ALJ did not explain why he found the opinion of Dr. Rivera and Ms. Bourelle unsupported, he erred in discrediting it. *See Jeanett M. v. Kijakazi*, No. 21-cv-00587-JSC, 2022 WL 1239344, at *3 (N.D. Cal. Apr. 27, 2022) (finding ALJ erred in

discrediting physician's opinion because the ALJ failed to explain why he found the opinion unsupported in light of the record as a whole).

Based on the foregoing, the Court finds that the ALJ erred in his assessment of Dr. Rivera and Ms. Bourelle's opinion.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel,* 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument concerning whether the ALJ properly evaluated his subjective complaints, which can be addressed on remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

///

///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is REVERSED, and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Larry Lee Childress and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **May 18, 2022**                           /s/ *Barbara A. McAuliffe*
                                                                UNITED STATES MAGISTRATE JUDGE