UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA YVONNE BLEA,<br><br>          Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>          Defendant. | Case No. 1:20-cv-01803-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 22)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Erica Yvonne Blea ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

record and is based upon proper legal standards. Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

### FACTS AND PRIOR PROCEEDINGS

Plaintiff protectively filed an application for supplemental security income on August 30, 2017. AR 36, 212-18.[2] Plaintiff alleged that she became disabled on May 8, 2017, due to lupus, unspecified seizures, anemia, tricuspid and mitral heart valve prolapse and Raynaud's Syndrome. AR 212, 234. Plaintiff's application was denied initially and on reconsideration. AR 111-15, 123-27. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Shane McGovern held a hearing on April 3, 2020. AR 43-75. ALJ McGovern issued an order denying benefits on April 28, 2020. AR 21-36. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 10-15. This appeal followed.

**Hearing Testimony**

The ALJ held a telephonic hearing on April 3, 2020. Plaintiff appeared with her attorney, Jonathan O. Pena. Robin Cook, an impartial vocational expert, also appeared and testified. AR 24, 45.

In response to questions from the ALJ, Plaintiff testified that, at least during the week, she lives with four of her children ranging in age from 16 to 10 years old. They assist her with things around the home, like cooking dinner, doing laundry, opening jars and taking out the trash. AR 51-52. Plaintiff does not have a driver's license. It was medically suspended in 2017 due to her seizures. If she has a doctor's appointment, her husband, father or sister will pick her up. AR 52-53.

When asked about her education and work background, Plaintiff testified that she attended some community college and completed medical assistant vocational training in 2008. She has not worked since 2017. In the past, she worked as a caregiver and in private in-home care. AR 53-

Following questions from the ALJ, Plaintiff's counsel asked Plaintiff regarding the reasons she is unable to work. When asked about her lupus, Plaintiff testified that it has worsened since 2017. It limits her ability to work because she is extremely fatigued. There are times she cannot use her hands

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

due to soreness, stiffness and joint pain. She has edema in her legs, sun sensitivity and stress sensitivity. She lies down frequently because of pain, swelling or fatigue, and in an eight-hour period she would have to lie down for about three to four hours. She has daily swelling of her hands. She also has random flare-ups that cause frequent fevers. She could be fine and then a couple hours later she will have a fever. She also has sun sensitivity that causes pain and a butterfly rash on her cheeks. Another flare-up issue is hair loss, she gets anemic, and her vitamin D starts to get deficient. She also can gain or lose weight depending on her medications. She has flare-ups every couple weeks and they can last from a couple days to two weeks. With regard to the edema in her lower extremities, she deals with it on a daily basis. They have her on a diuretic, which sometimes helps with the swelling. She also has to elevate her lower extremities, which she will do when she is lying down for three or four hours. AR 57-59. Her seizures are now stabilized, and she had not had a seizure in about a year. She takes heavy sedatives for her seizures, and they bring on fatigue. AR 60.

Plaintiff additionally testified that she has a heart arrhythmia that causes fatigue, swelling, lightheadedness and shortness of breath. She was sent to a cardiac surgeon and will need pacemaker surgery and ablation surgery. AR 61.

When asked about her activities, Plaintiff testified she can walk about 20 to 30 minutes at one time. She can stand about 30 to 45 minutes before she needs to sit. She can sit for about an hour before she has to get up or elevate her legs. She can lift less than 10 pounds. She can engage in a chore activity, such as sweeping, cooking, or cleaning, for one to two hours. AR 61-63.

When asked about her carpal tunnel, Plaintiff testified that it is getting hard to write, open jars, and brush her hair. Prior to her carpal tunnel issues, she was able to take care of her own personal needs. AR 63.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE categorized Plaintiff's past work as home attendant. AR 66-67. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume a person of the claimant's age, education, and work background. This person could perform sedentary work, but no ladders, ropes, or scaffolds, occasional ramps and stairs, balance, stoop, crouch, kneel, and crawl, with no exposure to moving mechanical parts or nonprotected heights or driving. The VE confirmed this eliminates past work, but

3

there are other jobs available, such as semi-conductor bonder, call-out operator, and document specialist. AR 67-68.

For the second hypothetical, the ALJ asked the VE to add to the first hypothetical that the person would be limited to a position that could be learned within 30 days and that did not involve conveyor belts or hourly quotas. The VE testified that only the position of document specialist would remain. AR 68-69.

For the third hypothetical, the ALJ asked the VE to add to the first hypothetical that the person would be limited to no more than frequent handling, fingering, and feeling bilaterally. The VE testified that the jobs remained the same in the same numbers. AR 69-70.

The VE additionally testified that employers generally will tolerate off-task behavior up to 15% of the workday. In terms of absenteeism, employers will tolerate 10 to 12 days per year, on average one day per month. AR 70-71.

Following the ALJ's questions, Plaintiff's counsel asked the VE additional hypothetical questions. For the fourth hypothetical, counsel asked the VE to assume hypothetical one and add that this person would require the ability to elevate the lower extremities to above waist for two hours throughout the workday. The VE testified that the hypothetical individual could not perform any of the identified jobs. AR 71.

For the fifth hypothetical, counsel asked the VE to assume hypothetical one, but add that the individual would need a 10-minute break every 45 minutes. The VE testified that this individual would not be able to perform any work in the national economy. AR 71-72.

For the final hypothetical, the ALJ asked the VE to add to either the first hypothetical or the third hypothetical that the person would be limited to a position that could be learned within thirty days. The VE confirmed that the jobs provided for in hypotheticals one and three would remain. AR 72.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 24-36. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 30, 2017, her application date. AR 26. The ALJ identified the following severe impairments: fibromyalgia and chronic pain syndrome with unspecified opioid use; degenerative disc disease of the cervical spine; seizure disorder; systemic lupus; and morbid obesity. AR 26-29. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 29-30.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except she could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, could frequently handle, finger, and feel bilaterally, could have no exposure to moving mechanical parts or unprotected heights and could perform no driving while at work. AR 30-34. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but could perform other jobs in the national economy, such as semi-conductor bonder, call out operator, and document specialist. AR 34-36. The ALJ therefore concluded that Plaintiff was not disabled. AR 36.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,*

*Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred in evaluating the following: (1) the medical opinion evidence in developing Plaintiff's RFC; and (2) Plaintiff's symptom testimony.

**A.  Residual Functional Capacity – Medical Opinion Evidence**

Plaintiff asserts that the ALJ improperly relied on his own interpretation of the evidence in determining the RFC.  In particular, Plaintiff argues that the ALJ improperly rejected the medical opinion evidence.  (Doc. 22 at 10-13.)  Although Plaintiff appears to challenge the ALJ's evaluation of the state agency physician opinions and the consultative examiner opinion, she does not disagree with the ALJ's determination that she is more limited than those doctors found.  (Doc. 22 at 11.)  Instead, the crux of Plaintiff's argument is that the ALJ's RFC failed to properly consider the opinion of her treating physician, Dr. Okey Sams.  (*Id.* at 12-13.)  Specifically, Plaintiff argues that the ALJ erred by

---

[3]  The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

failing "to articulate his rationale relative to the findings of Dr. Sams that assessed off task behavior and absenteeism." (Doc. 22 at 13.) The Court therefore limits its focus to the ALJ's evaluation of Dr. Sams' opinion.[4]

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 416.920c  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a)(1). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(3)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. These standards of articulation no longer apply in light of the new regulations. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject

---

[4] Plaintiff faults the ALJ for failing to adopt any of the medical opinions in developing Plaintiff's RFC. However, the ALJ is not required to "defer or give any specific evidentiary weight to any medical opinion(s)." 20 C.F. R. § 416.920c(a)(1). "The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-CV-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022); *see* 20 C.F.R. § 416.945 ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted); *see* 20 C.F.R. § 416.920c(b).

<u>Dr. Sams' Opinion</u>

On January 23, 2020, Dr. Sams completed a Physical Medical Source Statement. AR 1814-17. Dr. Sams opined that Plaintiff could walk less than a block, sit for 30 minutes at one time and stand for 30 minutes at one time. In an 8-hour working day, she could sit less than 2 hours and stand/walk for less than 2 hours. She would need a job that permitted shifting positions at will and that included periods of walking every 60 minutes for 10 minutes at a time. AR 1814. She also would need to take unscheduled breaks 3-4 times for 10-15 minutes. With prolonged sitting, Plaintiff did not need to elevate her legs. AR 18156. Dr. Sams further opined Plaintiff could lift 10 pounds occasionally and 20 pounds rarely, could frequently twist, occasionally stoop (bend), rarely crouch/squat and never climb stairs or ladders. Plaintiff also had significant limitations with reaching, handling, or fingering. AR 1816. Additionally, Dr. Sams opined that Plaintiff would be off task 25% or more of a typical workday. She would have "good days" and "bad days," and, on average, would miss more than four days per month. She also would have limitations from temperature extremes, sick co-workers, sun exposure and stress. AR 1817.

In evaluating Dr. Sams' opinion, the ALJ reasoned as follows:

> Dr. Sams opined that the claimant had several extreme limitations including that the claimant would need to take three to four unscheduled breaks per day for ten to fifteen minutes, would be off task more than twenty-five precent of the day, and would miss more than four days of work per month [ ]. This opinion is not persuasive. This opinion was not supported by reference to the claimant's objective examinations or an adequate explanation of the claimant's limitations. [ ] Additionally, this opinion is inconsistent with the objective medical record. For example, this opinion is inconsistent with the claimant's electroencephalography reports that generally showed diffuse slowing and very occasional right temporal sharp waive [sic], but with no seizures or epileptiform discharges and were noted as possibly being pseudoseizures (Exhibit 2F/22, 23, 37; 3F/72, 203; 7F/11; and 14F/1). Furthermore, this opinion is inconsistent with the claimant's physical examinations that often showed no edema (Exhibits 2F/5; 3F/10-156; 5F/2; 7F/2, 4, 15, 18, 20; 8F/3, 10F/2, 4; 12F/167; 18F/5; and 29F/12). Thus, this opinion is not persuasive.

AR 34.

The Court finds that the ALJ properly evaluated Dr. Sams' opinion under the new regulations. First, the ALJ found that Dr. Sams' opinion was not supported by reference to the Plaintiff's objective examinations or an adequate explanation of the claimant's limitations. *Id.* This reason expressly invokes the supportability factor, which is one of the key factors an ALJ must consider when determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive that medical opinion is. 20 C.F.R. § 416.920c(c)(1). Here, Dr. Sams' opinion largely consists of checked mark boxes. AR 1814-17. Although Dr. Sams reportedly treated Plaintiff every three months, there are no explanations correlating any examination findings with Dr. Sams' opinion. Further, Dr. Sams' treatment notes generally reveal physical findings within normal limits with the exception of Plaintiff's obesity. *See* AR 1797, 1799, 1802-05, 1838-39. The Court concludes that the ALJ's assessment is supported by the record.

Next, the ALJ found that Dr. Sams' opinion was inconsistent with the objective medical record. The ALJ's reasoning invokes the consistency factor, which means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim'" 20 C.F.R. § 416.920c(c)(2). As an example, the ALJ cited an inconsistency between Dr. Sams' opinion and Plaintiff's electroencephalography reports that generally showed diffuse slowing and very occasional right temporal sharp wave, but with no seizures or epileptiform discharges and were noted as possibly being pseudoseizures. AR 34. The ALJ's finding of an inconsistency is supported record evidence of Plaintiff's EEGs showing no seizures. *See* AR 351 (normal EEG, no seizures or epileptiform discharges, "advised this is a pseudoseizure"), 370-71 ("diffuse slowing," no seizures or epileptiform discharges), 385 (normal EEG, no seizures or epileptiform discharges, "No changes are noted in the EEG during any of the patient's clinical events."); 505 (on EEG "very occasional right temporal sharp wave"); 635-36; 1082 ("pt has had multiple negative EEG's").

Plaintiff asserts that the ALJ's reason is internally inconsistent because, while the ALJ noted no seizure activity in objective testing, the ALJ found Plaintiff's seizure disorder to be a severe impairment. (Doc. 22 at 13.) However, Plaintiff's assertion does not undermine the ALJ's determination of the apparent inconsistency between Dr. Sams' identified diagnosis of seizures and the absence of seizure activity in objective testing. In other words, Plaintiff does not argue or otherwise suggest that the finding of an inconsistency between Dr. Sams' opinion and the objective medical record is error. Indeed, Plaintiff admits that there was no seizure activity in objective testing. (Doc. 22 at 13 ["While this is true…"].)

Plaintiff instead argues that regardless of whether Plaintiff suffers from seizures or pseudo seizures, "the net effect is that [Plaintiff] suffers from significant symptoms that would reasonably be expected to preclude acceptable attendance and on-task behavior." (*Id.*) However, Plaintiff apparently overlooks the ALJ's determination that the record and Plaintiff's own testimony demonstrated that Plaintiff's seizure medication was effective, the seizure activity had stabilized, and Plaintiff had not experienced a seizure in over a year. AR 32, 60 ("Right now it's stabilized. It's working. I haven't had a seizure in about a year"), 65 ("I've been maintaining with the medication that I'm on . . . ."), 1840 (2/19/2020 medical record noting no seizure since 2/2019); *see also* AR 445, 531, 1212, 1308, 1348, 1590, 1794 (no seizure breakthroughs), 1797 (same), 1802 (seizures quiescent), 1803 (in July 2019, no seizures for about one year). Impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, the record evidence regarding the effectiveness of Plaintiff's treatment for seizures does not support Plaintiff's argument that the ALJ's assessment failed to account for the frequency of Plaintiff's seizure activity or "to define how an individual experiencing multiple seizures per day could satisfy the attendance and on-task behavior tolerances to which the vocational expert testified." (Doc. 22 at 11.)

In evaluating the consistency of Dr. Sams' opinion with the objective medical record, the ALJ also found the opinion inconsistent with the claimant's physical examinations that often showed no edema. AR 34. The ALJ's assessment is supported by record evidence. AR 353, 443, 445, 449, 455, 460, 470,481, 485, 488, 492, 494, 497, 503, 507. 508, 511, 516, 519, 522, 529, 531, 532-33, 537, 540,

545, 547, 550, 553, 556, 559, 1011, 1073, 1075, 1086, 1089, 1091, 1129, 1141, 1143, 1332, 1535, 1847. Plaintiff argues that this inconsistency regarding edema is not germane to the finding of attendance and on-task behavior and asserts that if the ALJ had properly reviewed the evidence, including when she needed to go to the emergency room or be admitted to the hospital for lupus flares (and seizures addressed *supra*), then "the ALJ would have found that Plaintiff could not meet the attendance and on-task demands of competitive work." (Doc. 22 at 14.)

Plaintiff's argument is not persuasive for several reasons: First, Plaintiff's argument does not undermine or otherwise challenge the ALJ's determination that Dr. Sams' opinion was inconsistent with examination findings regarding edema. Indeed, Dr. Sams' opinion relied on symptoms of swelling and Plaintiff's related lupus diagnosis. AR 1814. Second, and as noted by the ALJ, Plaintiff alleged that she was unable to work because her lupus caused, among other issues, edema in her legs, forcing her to lie down and elevate her legs for three to four hours during the day. AR 30, 57 ("I have edema all in my legs"), 58-59. The ALJ's opinion therefore accounted for certain symptoms resulting from Plaintiff's lupus. Third, and critically, Plaintiff once more overlooks the ALJ's finding that Plaintiffs "lupus flare-ups were generally treated with medication, including Plaquenil, which the claimant reported helped her symptoms." AR 32, 1041. The ALJ also relied on record evidence that Plaintiff's lupus was often noted as being stable, quiescent, and in remission with medication, which is supported by substantial evidence in the record. AR 32, 1021 ("Lupus stable and in remission, continue Plaquenil"), 1024 (same), 1027 (same), 1034 (same), 1037 (same), 1040 ("Lupus stable and in remission"), 1046 ("SLE in remission continue Plaquenil"), 1049 (same), 1653 ("Lupus stable an in remission, continue Plaquenil"), 1820 (in October 2020, lupus "somewhat quiescent now"); 1799 (stable, quiescent). Again, impairments that can be controlled effectively with medication are not disabling." *Warre*, 439 F.3d at1006. Based on the foregoing, the Court finds that the ALJ's decision to deem Dr. Sams' opinion unpersuasive is supported by substantial evidence after consideration of the factors of supportability and consistency.

**B. Plaintiff's Subjective Testimony**

Plaintiff argues that "the ALJ failed to set forth reasons, consistent with and supported by the evidence, for discounting Plaintiff's complaints of symptoms relative to her physical impairments . . .

11

include[ing] unpredictable days of pain and seizure activity." (Doc. 22 at 15.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 31. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ acknowledged Plaintiff's report of chronic lupus flare-ups, seizures, back pain, shortness of breath, and chest pain arising, at least in part, out of her fibromyalgia and chronic pain syndrome, degenerative disc disease of the cervical spine, seizure disorder, and systemic lupus. AR 31. However, the ALJ found that Plaintiff's allegations of constant symptoms were "out of proportion to her typically unremarkable presentation during appointments." AR 31. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff first argues that she consistently reported that her symptoms were unpredictable, not constant as asserted by the ALJ, citing evidence of her lupus flare-ups and seizures that could recur at any time. (Doc. 22 at 15.) Plaintiff maintains that the ALJ's mischaracterization that she reported constant pain is not a legitimate reason for discounting her testimony. The Court does not agree that the ALJ mischaracterized Plaintiff's allegations of "*constant symptoms*." AR 31. Plaintiff herself testified that she has swelling of the hands on a "daily" basis, (AR 58), and experiences edema in the lower extremities "on a daily basis" (AR 59). Further, the ALJ found that Plaintiff had "chronic pain

1   syndrome," a severe impairment.  AR 26.  Plaintiff does not challenge the ALJ's finding of chronic
2   pain syndrome.  Further, the ALJ's evaluation of the objective medical evidence was not limited to
3   Plaintiff's complaints regarding her lupus flare-ups, which she reported as "unpredictable," or her
4   seizure episodes, which could "recur at any time."  AR 243.  For instance, the ALJ also considered
5   objective evidence regarding Plaintiff's degenerative disc disorder and her cardiovascular condition.
6   AR 31-32.  Plaintiff also does not challenge the ALJ's findings relative to these impairments.

7   Plaintiff next argues that the ALJ willfully disregarded the nature of her impairments by citing
8   records where she was in no acute or apparent distress (AR 31).  In particular, Plaintiff faults the ALJ
9   for citing to Plaintiff's post-treatment state during a hospital visit in which Plaintiff was
10  "unresponsive," in "full tonic clonic" seizure, and had to be intubated, but was in no distress, alert,
11  oriented, and stable on discharge.  AR 31, 1074-76, 1082.  Plaintiff also points to other instances in
12  which Plaintiff was rushed to the hospital due to her seizures, arguing that it stands to reason that an
13  individual rushed to the hospital, unconscious, in tonic-clonic state or intubated is neither mildly
14  distressed or not acutely distressed.  Plaintiff therefore concludes that ALJ's rationale for discounting
15  her symptoms lacks legitimacy.  (Doc. 22 at 16.)   The Court does not disagree that the ALJ erred in
16  citing certain post-treatment evidence or other evidence regarding Plaintiff's emergency or hospital
17  treatment in discounting Plaintiff's subjective testimony.  Nevertheless, the Court finds that any such
18  error is harmless because, as discussed below, the ALJ provided other valid reasons for discounting
19  Plaintiff's subjective testimony.  *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161-63
20  (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error
21  where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*
22  *v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was
23  harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony,
24  but also provided valid reasons that were supported by the record").

25  Moreover, the ALJ acknowledged Plaintiff's history of multiple hospitalizations, intubations,
26  and emergency room treatment for actives seizures, but found that Plaintiff reported relief from
27  treatment, her seizure medication was effective, and she had not experienced a seizure in over a year.
28  AR 32.  The ALJ also cited to record evidence that Plaintiff's lupus was generally treated with

1   medication and her lupus was often noted as being stable, quiescent, and in remission with medication.
2   AR 32.  As reiterated in this order, impairments that can be controlled effectively with medication are
3   not disabling. *Warre*, 439 F.3d at 1006; 20 C.F.R. § 416.929(c)(3)(iv) (an ALJ may consider the
4   effectiveness of medication in evaluating a claimant's symptoms).  Indeed, a plaintiff's improvement
5   with treatment is a clear and convincing reason for discounting her subjective symptom testimony.
6   *See Deyon v. Kijakazi*, No. 1:20-CV-01532-SKO, 2022 WL 1782465, at *10 (E.D. Cal. June 1, 2022)
7   (citations omitted).

8         Plaintiff maintains that "had the ALJ properly considered the evidence as well as her testimony
9   regarding the unpredictable nature of her impairments, he would have determined that while there was
10  improvement with treatment, the episodic nature of her impairments remained, requiring multiple
11  additional occurrences of emergent care due to recurrence of significant symptomatology."  (Doc. 22
12  at 17.)  Plaintiff's argument is not wholly persuasive.  According to treatment records from February
13  2020, Plaintiff had not had a seizure February 2019. AR 1840.  Plaintiff testified in April 2020 that her
14  seizure medication was effective, the seizure activity had stabilized, and she had not experienced a
15  seizure in over a year. AR 60, 65.  Treatment records from July 2019 also noted no seizures for about
16  one (1) year. AR 1803.  The Court therefore finds substantial evidence supports the ALJ's
17  determination that Plaintiff's seizures improved and were controlled with medications.  Given
18  Plaintiff's own admission, there is no indication that once controlled with medications she required
19  additional emergent care due to recurrences of significant symptomology.  Additionally, Plaintiff's
20  lupus was often noted as being stable, quiescent, and in remission with medication. AR 1021 ("Lupus
21  stable and in remission, continue Plaquenil"), 1024 (same), 1027 (same), 1034 (same), 1037 (same),
22  1040 ("Lupus stable and in remission"), 1046 ("SLE in remission continue Plaquenil"), 1049 (same),
23  1653 ("Lupus stable an in remission, continue Plaquenil"), 1820 (in October 2020, lupus "somewhat
24  quiescent now"); 1799 (stable, quiescent).  Plaintiff does not cite evidence of recurrent emergent care
25  following stabilization or noted remission of her lupus with medication.

26        Additionally, the ALJ noted the conservative treatment Plaintiff received for her lupus, which
27  was treated with medication, including Plaquenil.  An ALJ is permitted to consider evidence of
28  conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d

14

742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). Plaintiff does not appear to challenge this finding by the ALJ.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Erica Yvonne Blea.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **July 26, 2022**         /s/ *Barbara A. McAuliffe*        
UNITED STATES MAGISTRATE JUDGE